Venancio CORTES–CASTILLO,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 92–3121.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1993.

Decided June 23, 1993.

Douglas Schoppert (argued), Coursey & Schoppert, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Chicago, IL, William J. Howard, David J. Kline, Donald E. Keener (argued), Dept. of Justice, Office of Immigration Litigation, Washington, DC, Michael L. Harper, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, for respondent.

Before CUMMINGS and FLAUM, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

FLAUM, Circuit Judge.

The Immigration and Naturalization Service (INS) charged Venancio Cortes–Castillo (Cortes) with deportability in March of 1983, pursuant to section 241(a)(11) of the Immigration and Nationality Act (INA), because he had been convicted in 1977 for delivery of heroin. Cortes filed applications for relief from deportation and suspension of deportation under sections 212(c) and 244(a)(2) of the INA. 8 U.S.C. §§ 1182(c), 1254(a)(2). In November of 1986, the Immigration Judge (IJ) found Cortes deportable and denied his applications for waiver and suspension. Cortes sought relief from the Board of Immigration Appeals (Board), which dismissed his appeal in August of 1992. Cortes now appeals the denial of relief under sections 212(c) and 244(a)(2).

## I.

Venancio Cortes–Castillo was born in 1953 in Agua del Medio, San Luis Potosi, Mexico. In 1966, at the age of thirteen, he was admitted into the United States as a lawful permanent resident. Cortes has not returned to Mexico since 1969. Only a maternal grandmother and a few other relatives remain there. His parents and nine siblings live in Chicago and are either citizens of the United States or lawful permanent residents. Cortes' sixteen-year-old daughter Vanessa is a United States citizen by birth and lives with her mother in Chicago. Cortes was never married to Vanessa's mother and does not provide financial support to her, but he spends time with Vanessa every week. At the time of the deportation hearing, Cortes was renting an apartment in a building jointly owned by a brother, Macrovio, and a sister, Estele. Cortes performed maintenance jobs at the building. Macrovio and Estele also live in the building with their families. His mother suffers from diabetes and cataracts; Cortes often helps her around the house and does errands for her.

In 1977, Cortes was convicted under Illinois law for delivery of more than thirty grams of heroin. He received a sentence of seven to twenty-one years in prison and served five years and five months. While in prison, Cortes participated in an Alcoholics Anonymous program for twenty-five weeks and was active in the Jaycees, from which he received several awards. He also attended trade school in prison. Cortes' mother, daughter, and several siblings visited him frequently during his incarceration, often travelling several hundred miles to see him.

Since his release from prison in 1983, Cortes has volunteered his time to the Boys' Club and B.A.S.T.A. (Brotherhood Against Slavery To Addiction), where he performs odd jobs and counsels others against using drugs. Cortes completed his parole in April of 1986. His parole officer noted that Cortes was "extremely cooperative and receptive to supervision" and "was never arrested during

his parole term." R. 208. At the time of the deportation hearing, Cortes was unemployed and receiving public assistance. By the time he appealed to the Board, however, he no longer received public assistance and had been employed for seventeen months. Cortes testified at the hearing that he was no longer involved in drugs and that he limited his alcohol use to social occasions. Family members confirmed this testimony. His siblings also testified that Cortes' character had improved since his incarceration.

## II.

On March 30, 1983, the INS issued an Order to Show Cause, charging Cortes with deportability under section 241(a)(11) of the INA. Cortes admitted deportability and applied for a waiver of deportability and excludability under section 212(c). He also applied for suspension of deportation under section 244(a)(2).

The IJ determined that Cortes was eligible for a section 212(c) waiver and held a hearing on his applications. After the hearing, the IJ conducted a balancing test, using the factors set forth in *Matter of Marin*, 16 I. & N. 581 (BIA 1978), to decide whether to grant Cortes relief under section 212(c). As part of the balancing test, the IJ determined that Cortes' drug conviction required him to show unusual or outstanding countervailing equities. In Cortes' favor, the IJ found that Cortes had lived in the United States since the age of thirteen and had significant ties to the country. Nonetheless, the IJ expressed concern with the seriousness of Cortes' conviction. The IJ also mentioned that although Cortes had a child, she was born out of wedlock and was cared for by her mother, without financial support from him. Cortes was unemployed and subsisting on public aid and food stamps; employment, according to the IJ, was a significant indicator of rehabilitation.

The IJ also found several factors that would mitigate the harshness of deporting Cortes to Mexico. Although he had not been there since 1969, his family made frequent trips to Mexico, and his maternal grandmother still lived there. Furthermore, Cortes' daughter and her mother were both United States citizens by birth and could travel between Mexico and the United States without restriction. The IJ also speculated that because Cortes was bilingual, he might find a job in the tourist industry in Mexico. For these reasons, the IJ concluded that relief under section 212(c) was not warranted.

The IJ also denied Cortes' application for suspension of deportation under section 244(a)(2). He determined that Cortes failed to show that he or his family would suffer extreme hardship. Cortes owned no business or residential property. His only community activities were B.A.S.T.A. and the Boys' Club. While Cortes had some employment history, he did not show self-sufficiency. Neither Cortes' relationship with his daughter nor any financial losses he might face amounted to extreme hardship.

Cortes appealed the IJ's decision to the Board. He submitted additional evidence showing that he had been off public assistance since October of 1987 and had been working for the past seventeen months at the Chicago Health Club. He included an affidavit from his employer stating that Cortes was "an individual of excellent moral character, a sincere, reliable, and responsive person, who is an asset to our community." R. 37.

The Board rendered its decision in August of 1992, more than five years after the hearing before the IJ. Relying on the Immigration Act of 1990, the Board determined that Cortes was an aggravated felon who had served more than five years in prison and therefore was statutorily ineligible for waiver under section 212(c). The Board also agreed with the IJ that the hardship Cortes might experience was typical of aliens subjected to deportation and not "exceptional or extremely unusual." Accordingly, Cortes was "statutorily ineligible" for suspension of deportation under section 244(a)(2).

## III.

### A. Waiver Under Section 212(c)

Pursuant to section 212(c) of the INA, "[aliens] lawfully admitted for permanent [residency] who temporarily proceeded abroad voluntarily and not under an order of

deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General." 8 U.S.C. § 1182(c). Section 212(c) also applies to lawful permanent residents who have not left the United States but meet the seven-year requirement and face deportation. *Cordoba–Chaves v. INS*, 946 F.2d 1244, 1247 (7th Cir.1991); *see also Leal–Rodriquez v. INS*, 990 F.2d 939, 948–949 (7th Cir.1993) (discussing extension of relief under section 212(c)).

■ Cortes met the threshold requirements to apply for section 212(c) relief. In reaching its decision, the Board erroneously relied on the Immigration Act of 1990, which amended section 212(c). Immigration Act of 1990, Pub.L. No. 101–649, 104 Stat. 4978 [IMMACT]. Under the 1990 Act, Cortes would be ineligible for a section 212(c) waiver.[1] The INS conceded at oral argument that the Board erred in applying the amended version of section 212(c), because Cortes submitted his application for relief prior to the amendment's effective date.

Once an alien is deemed eligible for a waiver under section 212(c), the Attorney General may grant a waiver of exclusion as a matter of discretion. 8 U.S.C. § 1182(c). The Attorney General (or the Attorney General's delegate, the Board) balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States. *Akinye-*

*mi v. INS*, 969 F.2d 285, 288 (7th Cir.1992) (citing *Cordoba–Chaves*, 946 F.2d at 1247).

In *Marin*, the Board identified several factors that the IJ should consider in determining whether to grant relief under section 212(c). Factors favoring relief include:

[F]amily ties within the United States, residence of long duration in this country (particularly when the inception of residence occurred while the respondent was of young age), evidence of hardship to the respondent and family if deportation occurs, service in this country's Armed Forces, a history of employment, the existence of property or business ties, evidence of value and service to the community, proof of a genuine rehabilitation if a criminal record exists, and other evidence attesting to a respondent's good character (e.g. affidavits from family, friends, and responsible community representatives).

*Marin*, 16 I. & N. at 584—85. Adverse factors include the nature and underlying circumstances of the exclusion ground at issue, any additional significant violations of this country's immigration laws, the nature, recency, and seriousness of a criminal record, and any other evidence of an alien's bad character or undesirability as a permanent resident. *Id.* at 584.

Particularly serious negative factors may require a heightened showing of favorable evidence involving unusual or outstanding equities. *Cordoba–Chaves*, 946 F.2d at 1247. Such a heightened showing is required when the alien has been convicted of a serious drug

---

1. Under sections 511(a) and 601 of IMMACT, section 212(c) of the INA was amended to preclude the benefit of a discretionary waiver under section 212(c) from applying "to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years." The term "aggravated felony" applies to "any illicit trafficking in any controlled substance" as defined in 18 U.S.C. § 924. 8 U.S.C. § 1101(a)(43).

Under the amended version, Cortes would be ineligible as an alien convicted of an aggravated felony who had served five years and five months for the delivery of a controlled substance. However, section 511(b) of IMMACT directs that the effective date of the amendment "shall apply to admissions occurring after the date of the enactment of this Act." IMMACT at § 511(b); *see also Leal*, 990 F.2d at 950. The INS regulations

amending 8 C.F.R. § 212.3 specify that "under the prevailing interpretation, the phrase 'shall apply to admissions' as used in section 511(b) of IMMACT refers to *all applications* for relief pursuant to section 212(c) of the Act *submitted after November 29, 1990* ...." 56 Fed.Reg. 50,033 (October 3, 1991) (emphasis added). Thus, the statutory bar to the section 212(c) waiver applies only to applications submitted after November 29, 1990. Cortes submitted his application for relief under section 212(c) on July 13, 1983.

The Board itself had previously cited to the federal regulations in concluding that "the statutory bar to section 212(c) relief shall apply only to those applications submitted after November 29, 1990." *Matter of A–A–*, ___ I. & N. ___, Int.Dec. 3176 at 17 (BIA 1992). The Board should have reached the same conclusion in Cortes' appeal.

offense, especially one relating to trafficking or the sale of drugs. *Matter of Edwards,* ___ I. & N. ___, Int.Dec. 3134 at 11 (BIA 1990). A proper determination of whether an alien has shown unusual or outstanding equities can be made only after a complete review of the favorable facts in his case. *Id.* at 11 n. 3.

The Board was required to review the evidence and balance the equities of Cortes' case, giving reasons for its discretionary determination. *Bastanipour v. INS,* 980 F.2d 1129, 1131 (7th Cir.1992). It must not only "engage in a careful, individualized review of the evidence," *Kaczmarczyk v. INS,* 933 F.2d 588, 595 (7th Cir.), *cert. denied,* ___ U.S. ___, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991), but also "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992) (quoting *Becerra– Jimenez v. INS,* 829 F.2d 996, 1000 (10th Cir.1987)). We may reverse the Board's decision if it "was made without a rational explanation, ... inexplicably departed from established policies, or rested on an impermissible basis." *Espinoza v. INS,* 991 F.2d 1294, 1297 (7th Cir.1993) (quoting *Akinyemi,* 969 F.2d at 288). The Board abuses its discretion when it fails to weigh important factors or neglects to state its reasons for denying relief. *Vergara–Molina,* 956 F.2d at 685 (citing *Blackwood v. INS,* 803 F.2d 1165, 1168 (11th Cir.1986)).

The INS argues that the Board reviewed the IJ's decision at length and agreed with the reasoning, thereby "adopting" the IJ's opinion. According to the INS, this "individualized review" of the IJ's deliberations constitutes a sufficient review of the equities of Cortes' appeal. We cannot agree. Although the Board did summarize the IJ's findings, we are unable to conclude that the Board conducted its own considered inquiry. Operating under the mistaken premise that Cortes was statutorily ineligible for relief,

the Board summarily dismissed the equities of Cortes' case and did not provide reasons for its conclusion. In *Bastanipour,* we determined that "[a] bare conclusion is not an adequate discharge of an administrative agency's responsibilities unless the ground or argument that it is rejecting is frivolous." *Bastanipour,* 980 F.2d at 1131 (citations omitted). *But see Garcia–Lopez v. INS,* 923 F.2d 72 (7th Cir.1991) (sufficient for Board merely to examine IJ's reasoning with care when it also considered new equities). The Board's inadequate review of the evidence and balancing of the equities constituted an abuse of discretion.

■ The Board's decision, issued more than five years after the IJ hearing, was particularly deficient in addressing the issue of rehabilitation. When an alien with a criminal record requests relief under section 212(c), rehabilitation is an important factor for the Board to consider in the exercise of its discretion. *Cordoba–Chaves,* 946 F.2d at 1247. The IJ had emphasized Cortes' employment status in determining that he was not rehabilitated. When Cortes appealed to the Board, he presented evidence of employment. Given this new information, the Board should have re-examined the equities and explained its reasoning. *See Akinyemi,* 969 F.2d at 290 (ordering the Board to "re-evaluate the case and consider specifically the petitioner's evidence with respect to rehabilitation").

**B. Suspension of Deportation Under Section 244(a)(2)**

■ A grant of relief under section 244(a)(2) requires a showing that "deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(2).[2] This court reviews the Board's determination for an abuse of discre-

---

2. The statute also requires the applicant to have been physically present in the United States for a continuous period of not less than ten years immediately following the commission of the act constituting a ground for deportation, and to prove that during that period, he has been and is a person of good moral character. The parties do not dispute that Cortes has met these requirements.

tion. *Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir.1987).

Relief under the "exceptional and extremely unusual hardship" standard of section 244(a)(2) is even more restrictive than the "extreme hardship" requirement of section 244(a)(1).[3] *Brown v. INS*, 775 F.2d 383 (D.C.Cir.1985). "Extreme hardship" may be narrowly interpreted due to the "exceptional nature of the suspension remedy." *INS v. Jong Ha Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). When the potential hardships the alien may encounter are the same faced by any alien to be deported, the "extreme hardship" standard has not been met. *Marquez–Medina v. INS*, 765 F.2d 673, 677 (7th Cir.1985) ("general allegations of emotional hardship caused by severing family and community ties are a common result of deportation"). We consistently have denied relief under the standard of section 244(a)(1) when aliens demonstrated only economic hardship, *see Diaz–Salazar v. INS*, 700 F.2d 1156 (7th Cir.), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983); *Mendoza–Hernandez v. INS*, 664 F.2d 635 (7th Cir.1981); *see also Jong Ha Wang*, 450 U.S. at 144, 101 S.Ct. at 1031 (1981) (mere showing of economic detriment not extreme hardship), or emotional hardship, *see Hernandez–Patino*, 831 F.2d at 754–55.

The Board found that the hardships Cortes and his family would experience are typical of aliens subject to deportation. Cortes points to the severance of family ties and to the impossibility of his obtaining a visa to return to the United States for a visit. These hardships, common to most deported aliens, are insufficient to establish "exceptional and extremely unusual hardship."

Cortes argues that the Board has departed from clearly established factors described in *Matter of S.*, 5 I. & N. 409 (BIA 1953), and *Matter of U.*, 5 I. & N. 413 (BIA 1953). These cases, decided in 1953, defined "exceptional and extremely unusual hardship" for the purpose of determining an alien's eligibility under what is now section 244(a)(1). Congress amended section 244(a)(1) in 1962

to require an "extreme hardship." Section 244(a)(2), which applies to aliens convicted of crimes, demands a heightened showing of "exceptional and extremely unusual hardship." The definition of "exceptional and extremely unusual hardship", now applied only to aliens seeking relief under section 244(a)(2), has become more stringent in the forty years since the Board decided *Matter of S.* and *Matter of U.* The Board acted within its discretion in declining to grant Cortes a suspension of deportation.

For the foregoing reasons, we GRANT the petition for review and REMAND for further consideration of Cortes' application for relief from deportation under section 212(c).

---

**3.** Section 244(a)(1) applies to an alien who "is deportable under any law of the United States

except the provisions specified in paragraph (2) of this subsection...."