10 F.3d 1034
 Nubia Marin De OSORIO, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent,
American Immigration Lawyers Association; National
Immigration Project of the National Lawyers Guild,
Amici Curiae.
Gustavo OSORIO, Petitioner,
v.
U.S. IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1993.
Decided Oct. 27, 1993.
As Amended Nov. 16, 1993.
 
 Lory Diana Rosenberg, American Immigration Law Foundation, Washington, DC, argued (Dawn Martin, Rafael Barreto, Martin, Bodley & Kraft, on the brief), for petitioner.
 Donald E. Keener, Civil Div., U.S. Dept. of Justice, Washington, DC, argued (Stuart E. Schiffer, Acting Asst. Atty. Gen., Robert Kendall, Jr., Asst. Director, Office of Immigration Litigation, Civil Div., U.S. Department of Justice, on the brief), for respondent.
 Denyse Sabagh, Metzger, Gordon & Scully, Washington, DC, Barbara Hines, Lawyers' Committee for Civil Rights Under Law of Texas Immigrant and Refugee Rights Project, Austin, TX, for amici curiae.
 Before PHILLIPS, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 WILLIAMS, Circuit Judge:
 
 
 1
 This petition presents a question of statutory interpretation regarding an amendment to Sec. 212(c) of the Immigration and Naturalization Act (INA), 8 U.S.C.A. Sec. 1182(c) (West Supp.1993). The amendment bars aliens convicted of an aggravated felony who have served a term of imprisonment of at least five years from seeking the discretionary waiver of deportation available under Sec. 212(c). The Board of Immigration Appeals, applying this provision, held that discretionary relief from deportation was not available to either Nubia Marin de Osorio or Gustavo Adolfo Osorio because they each have been convicted of aggravated felonies and they each have served over five years in prison. The Osorios have petitioned for review of the Board's order, contending that the bar is not applicable to them because their convictions pre-date the enactment of the statutory definition of aggravated felony and the definition was only intended to encompass convictions after the enactment date. Because we find the Board's interpretation of the amendment to Sec. 212(c) to be reasonable and consistent with congressional intent in enacting the amendment, we defer to that interpretation and deny the Osorios' petitions.
 
 I.
 
 2
 Both Nubia Marin de Osorio and her son, Gustavo Adolfo Osorio, are natives of Colombia who became lawful permanent residents of the United States in 1978. Mrs. Osorio is fifty-five years old and has resided in the United States for twenty-five years. Mr. Osorio is thirty-two years old and has resided in the United States for twenty-two years. Both Petitioners have been convicted of drug related offenses and concede that they have served more than five years imprisonment for their convictions.[1] The Immigration and Naturalization Service (INS) issued orders to show cause why petitioners should not be deported pursuant to Sec. 241(a)(11) of the INA, 8 U.S.C.A. Sec. 1251(a)(11) (West Supp.1993), which makes conviction for a drug related offense a ground for deportation. The Osorios, by counsel, admitted the factual allegations of the order to show cause and conceded their deportability.
 
 
 3
 The Osorios then filed applications for waivers of deportation under Sec. 212(c). An Immigration Judge found petitioners ineligible for waivers of deportation because they had been convicted of aggravated felonies. The Osorios appealed the Immigration Judge's rulings to the Board. The Board, finding no error in the Immigration Judge's opinion and adhering to its interpretation of Sec. 212(c) in Matter of A-A-, Int.Dec. 3176 (B.I.A.1992), dismissed Petitioners' appeal. We granted the Osorios' motions for discretionary stays of deportation under INA, 8 U.S.C. Sec. 1105a(a)(3) (1988) in order to resolve their challenge to the Board's interpretation of the amendment to Sec. 212(c).
 
 II.
 
 4
 On its face, the text of Sec. 212(c) simply gives the Attorney General the discretion to admit aliens with permanent residency who have temporarily traveled abroad. 8 U.S.C.A. Sec. 1182(c). Because of equal protection concerns, the INS and courts have uniformly held that the discretionary relief provided in Sec. 212(c) is also available to aliens with permanent residency facing deportation. See, e.g., Chiravacharadhikul v. INS, 645 F.2d 248 n. 1 (4th Cir.), cert. denied, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); Francis v. INS, 532 F.2d 268 (2d Cir.1976); Matter of Silva, 16 I & N Dec. 26 (B.I.A.1976).
 
 
 5
 In 1990, Congress amended Sec. 212(c) to make discretionary relief unavailable to aliens who had been convicted of an aggravated felony. Pub.L. No. 101-649, Sec. 511, 104 Stat. 4978, 5052. The specific amendment, contained in Sec. 511(a) & (b) of the Immigration Act of 1990 (IMMACT), Pub.L. No. 101-649, 104 Stat. at 5052, read as follows:
 
 
 6
 (a) IN GENERAL.--Section 212(c) (8 U.S.C. 1182(c)) is amended by adding at the end the following: "the first sentence of this subsection shall not apply to an alien who has been convicted of an aggravated felony and has served a term of imprisonment of at least 5 years."
 
 
 7
 (b) EFFECTIVE DATE.--The amendment made by subsection (a) shall apply to admissions occurring after the date of the enactment of this Act.[2] It is this amendment which is the subject of interpretation in this case. Specifically, the Osorios challenge the Board's interpretation of the term "admissions" in the effective date section as including all applications for relief under Sec. 212(c) and its interpretation of the term "aggravated felony" as including all convictions for aggravated felonies regardless of the date of the conviction.
 
 
 8
 In reviewing the Board's interpretation of Sec. 212(c), we must first ascertain "whether Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If congressional intent is clear then we, as well as the Board, must give effect to that unambiguously expressed intent. Id. at 842-43, 104 S.Ct. at 2781-82. The Supreme Court has instructed, however, that when we determine that Congress has not directly addressed the question at issue in a statute or its intent is ambiguous, we should not "simply impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation." Id. at 843, 104 S.Ct. at 2782. Here, we may not substitute our own construction of Sec. 212(c) unless the Board's interpretation is an unreasonable construction of the statute it is charged with enforcing. Id. at 844, 104 S.Ct. at 2782. This deference is appropriate whether the Board's interpretation is in the form of an interpretive ruling or regulation. See Kennedy v. Shalala, 995 F.2d 28, 30 n. 3 (4th Cir.1993) (interpretive ruling at issue was entitled to deference as the Secretary's interpretation of the statute she was charged with administering, even if the interpretive ruling itself did not have the force and effect of law).
 
 
 9
 The precise question we are faced with in this case is whether the Osorios continue to be eligible for Sec. 212 relief after the 1990 IMMACT amendment. If they are deemed eligible for relief under Sec. 212(c), it is within the discretion of the Attorney General (or the Attorney General's designate, the Board) whether to grant a waiver of deportation. Cortes-Castillo v. INS, 997 F.2d 1199, 1202 (7th Cir.1993). In doing so, the Attorney General or the Board generally "balances the social and humane considerations in the alien's favor against any adverse factors that demonstrate his or her undesirability as a permanent resident in the United States."[3] Id. Although the general purpose of Sec. 212(c) is ameliorative, it seems beyond dispute that Congress intended the 1990 IMMACT amendment to restrict the availability of Sec. 212(c) relief and curtail this ameliorative purpose. Indeed, the amendment removes all discretion from the Attorney General in granting Sec. 212(c) relief to persons convicted of aggravated felonies who have served a term of imprisonment of at least five years. In the context of the traditional factors affecting Sec. 212(c) relief, we read the amendment as declaring that aliens convicted of aggravated felonies who have served a term of imprisonment of five or more years are per se undesirable as permanent residents. The Osorios do not appear to disagree that the amendment was intended to restrict the availability of discretionary relief; they merely dispute the extent and scope of the restriction.
 
 
 10
 The Osorios argue that the amendment is not applicable to them because the use of the word "admissions" in Sec. 511(b) of the IMMACT, Pub.L. No. 101-649, 104 Stat. 4978, 5052, means that the aggravated felony bar is only applicable to aliens who are seeking physical entry into the United States. The Osorios assert that if Congress had intended the amendment to Sec. 212(c) to apply to deportation proceedings as well, it would have stated so in the amendment. According to the Osorios, an application for a waiver of deportation is simply not the same as an application for admission. Because Mrs. Osorio was physically admitted into the United States in 1968 and Mr. Osorio was physically admitted in 1978, they argue the bar which only refers to "admissions" does not apply to them.
 
 
 11
 As discussed above, there is nothing in the actual text of Sec. 212(c) which makes it applicable to deportation proceedings at all. This application comes from judicial construction of the section based on equal protection considerations. In the supplementary information published with the new regulations governing applications for relief under amended Sec. 212(c), the Attorney General clarified that "under the prevailing interpretation," admissions, as used in Sec. 511(b), "refers to all applications for relief pursuant to section 212(c) of the Act submitted after November 29, 1990, whether at a port of entry or in subsequent proceedings before a district director or Immigration Judge." 56 Fed.Reg. 50,033-34 (1991). The Board in Matter of A-A- noted that this interpretation is consistent with the established view of the courts that Sec. 212(c) relief is available for aliens facing deportation proceedings as well as those physically seeking admission into the United States. Int.Dec. 3176 at 16-17 n. 22 (B.I.A.1992). The Attorney General's rulings on questions of law are binding on the Board, therefore, it adopted the Attorney General's interpretation that "admissions" encompasses all applications for Sec. 212(c) relief. Id. at 17 n. 23.
 
 
 12
 We find the Board's and the Attorney General's interpretation to be reasonable and consistent with congressional intent. Although the Osorios are correct with regard to the technical meaning of "admissions" in the context of immigration laws, the interpretation they advocate would require ignoring the administrative and judicial interpretations which have broadened the meaning of "admissions" in the Sec. 212(c) context. These decisions have held that Sec. 212(c) no longer exclusively applies to aliens who have departed and are seeking reentry or readmission back into the United States, but also to those who have not departed but are in deportation proceedings. Nwolise v. INS, 4 F.3d 306, 309-10 (4th Cir.1993); Chiravacharadhikul, 645 F.2d at 248 n. 1. We do not believe it is unreasonable for Congress to assume that its use of the term "admissions" in the amendment to Sec. 212(c) would be subject to the prevailing judicial and administrative interpretation. Accordingly, we affirm the Board's conclusion that the aggravated felony bar applies to the Osorios because their applications for Sec. 212(c) relief were filed after November 20, 1991, the enactment date of IMMACT.
 
 
 13
 The Osorios still maintain, however, that the aggravated felony bar does not apply to them. They concede that their convictions for drug related offenses are substantively encompassed within the definition of aggravated felony. They contend, however, that the definition of aggravated felony, and therefore the use of the term in the amendment to Sec. 212(c), only applies to convictions after November 18, 1988, the effective date of the Anti-Drug Abuse Act of 1988 (ADAA).
 
 
 14
 The definition of "aggravated felony" within the context of the immigration laws originated in the ADAA, Pub.L. No. 100-690, Sec. 7342, 102 Stat. 4181, (codified in Sec. 101(a)(43) of the INA, 8 U.S.C.A. Sec. 1101(a)(43) (West Supp.1993)). No effective date was given to this definitional provision in the ADAA. The Board addressed the scope of the term "aggravated felony" in its decision in Matter of A-A-, Int.Dec. 3176 (B.I.A.1992). Therein, the Board determined that an aggravated felony, as defined in Sec. 101(a)(43), 8 U.S.C.A. Sec. 1101(a)(43), encompassed all convictions described in the ADAA's definition, whether the conviction occurred on, before, or after the date of enactment of the ADAA. Id. at 1. Consequently, the Board held that the statutory bar to relief in Sec. 212(c) applied to all aggravated felony convictions regardless of when the conviction occurred. Id.
 
 
 15
 Both the Board and the Osorios offer numerous arguments as to why their interpretation of the temporal scope of the term "aggravated felony" is more consistent with congressional intent. To characterize these arguments as complex and irreconcilable would be an understatement.
 
 
 16
 The Board contends that because other sections of the ADAA and the IMMACT have explicitly prospective language (i.e. they are applicable only to aggravated felony convictions on or after the date of enactment), then sections without any temporal limits, such as Sec. 212(c), must include all aggravated felonies.[4] The Board also points to certain sections of the ADAA which it asserts would not make sense if the definition of aggravated felony were only prospective.[5] At oral argument the Board also argued that the plain language of the aggravated felony amendment to Sec. 212(c), referring to "an alien who has been convicted of an aggravated felony," points to past action and supports a retroactive interpretation of the term.
 
 
 17
 In light of these considerations, the Board concluded in Matter of A-A- that unless specifically limited in its application by another section of the ADAA or INA, the definition of aggravated felony is retroactive as well as prospective and includes all convictions described in the definition, regardless of the date of the conviction. Int.Dec. 3176 at 11. The only exceptions noted by the Board are the crimes added to the definition of aggravated felony by IMMACT. Id. With regard to these crimes, Congress specifically provided that they were only aggravated felonies if committed on or after November 29, 1990, the effective date of IMMACT. Pub.L. No. 101-649, Sec. 501, 104 Stat. at 5048.
 
 
 18
 The Osorios, on the other hand, demonstrate that the ADAA, IMMACT, and the MTINA amendments all have some provisions that are prospective, some provisions that are retroactive, and some that are silent. They argue that the retroactive and prospective language would be redundant if the definition of aggravated felony includes all such crimes regardless of the date of conviction.[6] They also point to other amendments included in IMMACT which would not have been necessary if the Board's interpretation of aggravated felony is correct.[7] According to the Osorios, the Board's interpretation violates the accepted rule that when a statute is silent it must be construed prospectively, Kaiser Aluminum & Chem. Corp. v. Bonjorno, 493 U.S. 974, 110 S.Ct. 495, 107 L.Ed.2d 499 (1989), and that when Congress includes language in one section of a statute and omits it from another section, Congress is presumed to act intentionally in the disparate inclusion or exclusion. INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) (quoting Rusello v. United States, 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972))). The Osorios also assert that the analysis employed by the Ninth Circuit in Ayala-Chavez v. INS, 945 F.2d 288 (9th Cir.1991) is still persuasive support for their interpretation of the scope of the definition of an aggravated felony.[8] Finally, the Osorios rely on the fact that Congress revisited Sec. 212(c) in IMMACT in 1990, and in MTINA in 1991, and never modified it to state explicitly that it applied retroactively.
 
 
 19
 Both the Board and Osorio offer plausible reasons why the term "aggravated felony" as defined in Sec. 101(a)(43) and used in Sec. 212(c) should be interpreted in accordance with their positions. Indeed, we find that "the statute is silent or ambiguous with respect to the specific issue," Chevron, 467 U.S. at 843, 104 S.Ct. at 2782, and "the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. Presented with this question, we conclude that the Board's interpretation is a permissible construction of the statute and is more consistent with the intent of Congress to restrict the availability of Sec. 212(c) relief. In doing so, we are in agreement with the First Circuit's view of this issue in Barreiro v. INS, 989 F.2d 62 (1st Cir.1993). In Barreiro, the court found "frivolous" petitioners' restrictive interpretation of the term "admissions" in the amendment. Id. at 63. With regard to the "aggravated felony" issue, the Barreiro court found Matter of A-A- "so persuasive that we could well simply agree," Id. at 64, and pointed out that "[i]f Congress believed seven years' residence insufficient to entitle aliens to waivers if they had served five or more years imprisonment for committing an aggravated felony, it makes small sense that so substantial a stricture should not go into effect for five years from enactment."[9] Id.
 
 
 20
 Despite this conclusion we feel compelled to address the several arguments advanced by the Osorios. First, the Osorios contend that the Board's interpretation is not reasonable because it violates the presumption against retroactive application of statutes. We do not share the Osorios' view that the Board's interpretation results in a retroactive application of Sec. 212(c). "A statute is not made retroactive merely because it draws upon antecedent facts for its operation." Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922); see also, Reynolds v. United States, 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934) ("A statute is not rendered retroactive merely because the facts and requisites upon which its subsequent action depends ... are drawn from a time antecedent to the enactment."); Amaral v. INS, 977 F.2d 33, 36 (1st Cir.1992) (application of aggravated felony provision was not retroactive because of the mere fact that alien's prior convictions, before the enactment of the ADAA, turned his subsequent conviction, after the ADAA, into an aggravated felony). Similarly, the amendment barring applications for waivers of deportations filed by aggravated felons after November 29, 1990, is not made retroactive merely because it applies to convictions for aggravated felonies before that time. The past aggravated felony conviction is only the prerequisite for the prospective denial of discretionary relief.
 
 
 21
 In general, the concern regarding retroactive application of statutes is the deprivation of rights without notice and fair warning; such concerns are not present in this case. See Barreiro, 989 F.2d at 64 ("The presumption against a retroactive interpretation is to give fair warning so that a party may avoid consequences. This is scarcely a situation calling for any such a warning."). The Osorios make no argument, nor could they, that they somehow relied on the availability of a discretionary waiver of deportation when choosing to engage in illegal drug activity. Even if such notice and fair warning concerns were demonstrated in this case, it is well-established that Congress has the authority to attach present immigration consequences to past criminal activity and has done so on numerous occasions in the past. Ignacio, 955 F.2d at 298; United States v. Bodre, 948 F.2d 28, 32-33 (1st Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1487, 117 L.Ed.2d 628 (1992) (and citations therein). In this case, Congress did not attach additional consequences but merely withdrew a previously available form of discretionary relief. Because we do not view the Board's interpretation as a retroactive application of either Sec. 212(c) or Sec. 101(a)(43), we believe deference to its interpretation is appropriate.
 
 
 22
 The Osorios also contend that the Board is not entitled to deference because it has not acted consistently. They argue that Matter of A-A- contradicts other pronouncements of the Board. In support of this assertion, the Osorios rely on an unpublished decision of the Board which acknowledges the rule disfavoring retroactive application of statutes. Matter of Morris, Ahu-grz-cxn (March 26, 1991). We reject this contention. First, unpublished precedent is a dubious basis for demonstrating the type of inconsistency which would warrant rejection of deference. Second, as stated above, the Board's interpretation in this case does not conflict with the general rule disfavoring retroactive application discussed in Matter of Morris, because the same concerns about notice and fair warning are not implicated here. Lastly, an agency is allowed to change its interpretation as long as its position is reasonable and does not conflict with congressional intent. See Rust v. Sullivan, 500 U.S. 173, ----, 111 S.Ct. 1759, 1769 (1991) (agency is not required to establish rules to last forever and must give latitude to adapt rules and policies to changing circumstances); Hicks v. Cantrell, 803 F.2d 789, 793-94 (4th Cir.1986) (varying interpretation still due deference if it is reasonable). Because we find the Board's interpretation reasonable and consistent with congressional intent, any inconsistency between this decision and previous Board decisions is immaterial.
 
 
 23
 Next, the Osorios assert that we should not defer to the Board because this case presents a straightforward question of statutory interpretation, which is the province of the courts. In so doing, the Osorios analogize this case to INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987), where the Supreme Court held that the inquiry whether Congress intended two standards to be identical was "a pure question of statutory construction for the courts to decide." Certainly in the context of the type issue in Cardoza-Fonseca, the Supreme Court could simply employ traditional tools of statutory construction and conclude that Congress did not intend the two standards to be identical. Id. As the Supreme Court explained in Chevron:
 
 
 24
 The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.
 
 
 25
 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9 (emphasis added) (citations omitted). Cardoza-Fonseca involved this type of clear cut statutory construction issue; this case does not. Here, the statute is silent or, at best, ambiguous with respect to the competing interpretations offered by the Board and the Osorios. Therefore, the question we face, as was the case in Chevron, is whether the agency's response to this issue is a permissible construction of the statute.[10] Contrary to the Osorios' contention, we believe this is just the sort of issue that warrants deference to the agency to which Congress has delegated the authority for administering the statute in question.
 
 
 26
 Finally, the Osorios argue that we should not defer to the Board's interpretation because an ambiguous immigration statute should be interpreted in favor of leniency to the alien. See INS v. Errico, 385 U.S. 214, 225, 87 S.Ct. 473, 480, 17 L.Ed.2d 318 (1966); Costello v. INS, 376 U.S. 120, 128, 84 S.Ct. 580, 585, 11 L.Ed.2d 559 (1964); Fong Haw Tan v. Phelan, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433 (1948). The Osorios contend that this is especially true when the intent of the provision subject to interpretation is ameliorative, as with Sec. 212(c). While the Osorios are of course correct that lenity to the alien is an important principle in interpreting immigration statutes, we do not believe it has the dispositive effect that the Osorios seek to give it. Beyond the plain language of the statute in question, the most important guiding factor in conducting statutory interpretation is congressional intent. See Elliott v. Adm'r, Animal & Plant Health Inspection Serv., 990 F.2d 140, 144 (4th Cir.1993) (if a statute is not plain on its face we look first to the intent of Congress), cert. denied, --- U.S. ----, 114 S.Ct. 191, 126 L.Ed.2d 149 (1993); Bruce v. First Federal Sav. & Loan Ass'n, 837 F.2d 712, 714 (5th Cir.1988) ("Although in interpretation of statutory language reference should first be made to the plain and literal meaning of the words, the overriding duty of a court is to give effect to the intent of the legislature."). Congress's general intent in amending Sec. 212(c) in 1990 is indisputable. Congress unquestionably intended to restrict the availability of discretionary relief to aliens convicted of aggravated felonies. We believe the Board's interpretation is most consistent with this restrictive intent, and this consistency outweighs principles favoring a more lenient interpretation of the amendment. See INS v. Phinpathya, 464 U.S. 183, 196, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984) (suggestion that section of the INA be construed with lenity to broaden the Attorney General's discretion was fundamentally inconsistent with congressional intent to restrict the opportunity for discretionary administrative action); Pacheco v. INS, 546 F.2d 448, 449, 451 (1st Cir.1976), cert. denied, 430 U.S. 985, 97 S.Ct. 1683, 52 L.Ed.2d 380 (1977) (rejecting construction of the phrase "single scheme" in favor of the alien when intent of Congress was to be more restrictive).
 
 III.
 
 27
 Accordingly, we affirm the Board's decision in this case and the Osorios' petition is denied.
 
 
 28
 DENIED.
 
 
 
 [1]
 In March 1986, they were both convicted in federal district court for the district of New Jersey of conspiracy to possess with intent to distribute cocaine. The court sentenced Mrs. Osorio to seven years and Mr. Osorio to eight years imprisonment. In February 1988, Mr. Osorio was convicted in the Circuit Court of Henrico County, Virginia on two counts of conspiracy to distribute cocaine and was sentenced to forty years on each count. In March 1988, Mr. Osorio was convicted in Circuit Court in Hanover County, Virginia, of drug conspiracy and was sentenced to thirty years imprisonment. In April 1988, Mrs. Osorio was convicted in the Circuit Court of Henrico County on two counts of conspiracy to distribute cocaine and was sentenced to twenty years on each count
 
 
 [2]
 The language of this amendment to Sec. 212(c) was further revised in the Miscellaneous Technical Immigration and Naturalization Amendments of 1991 (MTINA) to clarify that the five-year term could be served for multiple convictions. Pub.L. No. 102-232, Sec. 306(a)(10), 105 Stat. 1733, 1751. MTINA replaced the phrase "an aggravated felony and has served" with "one or more aggravated felonies and has served for such felony or felonies," effective with the enactment of IMMACT. Id
 
 
 [3]
 The Board has described factors favoring relief as including: family ties in the United States; residence of a long duration; military service; a history of employment; good character; rehabilitation; and evidence of value and service to the community. Matter of Marin, 16 I & N 581, 58485 (B.I.A.1978). Factors weighing against relief include: the underlying ground for exclusion; violation of the immigration laws; the nature, recency, and seriousness of a criminal record; and any other evidence of an alien's bad character or undesirability as a permanent resident. Id
 
 
 [4]
 The Board asserted in Matter of A-A- that when Congress intended a restriction in the ADAA to apply to convictions only after the date of enactment, it expressly so stated. Int.Dec. 3176 at 8-10. For example, Sec. 7344(a) made aliens convicted of an aggravated felony deportable, but this provision was only to be prospectively applied to convictions after the date of the ADAA's enactment. 102 Stat. at 4470-71, (codified at Sec. 241(a)(4)(B) of the INA, 8 U.S.C.A. Sec. 1251(a)(4)(B) (West Supp.1993)). Portions of Secs. 7343 and 7347, 102 Stat. at 4470, 4471-72, also provided that the restrictions being enacted only applied to aliens "convicted of an aggravated felony on or after the date of enactment of [the 1988] Act." Sec. 7347(c), 102 Stat. at 4472 (codified at Sec. 242a of the INA, 8 U.S.C.A. Sec. 1252a (West Supp.1993)). According to the Board, if the definition of aggravated felony was intended to be strictly prospective, the language in these sections would be redundant and "[t]hese sections, therefore, present clear instances of the desire of Congress to restrict the scope of a disabling provision to recent convictions that would otherwise apply to all convictions because of the temporally unlimited language of the aggravated felony definition itself." Int.Dec. 3176 at 11
 
 
 [5]
 For example, Sec. 7345, 102 Stat. at 4471, enhanced the criminal penalties for the premature reentry of an alien deported pursuant to a conviction for an aggravated felony. This section was made applicable to aliens who entered, attempted to enter, or were found in the United States on or after the date of enactment. Similarly, Sec. 7346(a), 102 Stat. at 4471, which involved criminal sanctions for persons aiding excludable aliens convicted of aggravated felonies, and Sec. 7349, 102 Stat. at 4473, which increased the bar to reentry for aliens convicted of aggravated felonies, were applicable to any assistance or applications for reentry on or after the date of enactment. The Board concluded that it would be impossible for these provisions to be applicable to persons convicted of aggravated felonies on the date of enactment unless the definition is interpreted to include convictions before the enactment date. Int.Dec. 3176 at 6-8
 
 
 [6]
 For example, in the 1991 MTINA amendments, Congress also precluded an alien's access to automatic stays, Sec. 306(a)(11), eligibility for asylum, Sec. 306(a)(13)(1), and entitlement to withholding of deportation, Sec. 306(a)(13)(2), if he or she had been convicted of an aggravated felony "before, on, or after the date of enactment" of IMMACT. Pub.L. No. 102-232, 105 Stat. at 1751-52. The Osorios also argue that this language would not have been necessary if the definition of aggravated felony encompassed all convictions
 At oral argument, the Board asserted that the MTINA amendment was necessary at least with regard to the automatic stay provision, Sec. 306(a)(11): (1) because of the Ninth Circuit's opinion in Ayala-Chavez; and (2) because the plain language of Sec. 513(a) of IMMACT, Pub.L. 101-649, 104 Stat. at 5052 (emphasis added), stating that the automatic stay was applicable "unless the alien is convicted of an aggravated felony," conceivably supported a strictly prospective application.
 
 
 [7]
 For example, Sec. 509(b) of IMMACT, Pub.L. No. 101-649, 104 Stat. at 5051, changed the phrase "the crime of murder" in Sec. 101(f)(8) of the INA, 8 U.S.C.A. Sec. 1101(f)(8) (West Supp.1993), to "an aggravated felony," so that the section's bar to the establishment of good moral character applied to "one who at any time has been convicted of an aggravated felony." In the 1991 MTINA amendments, Pub.L. No. 102-232, Sec. 306(a)(7), 105 Stat. at 1751, Congress added the phrase "except with respect to conviction for murder which shall be considered a bar to good moral character regardless of the date of conviction" to Sec. 509(b). The Osorios contend that in order for this amendment to be necessary, "regardless of the date of conviction" must have a more expansive meaning than "at any time." They argue that the amendment was necessary for Congress to clarify that the bar to the establishment of good moral character for the crime of murder was not limited in scope; whereas aggravated felony convictions were limited to those occurring after November 18, 1988. The Osorios opine that if aggravated felony included all convictions regardless of the date, the amendment in Sec. 306(a)(7) would not have been necessary
 
 
 [8]
 The dispute in Ayala-Chavez centered on the automatic stay of deportation provision in 8 U.S.C. Sec. 1105(a)(3) (1988). 945 F.2d at 289. Specifically, the issue was whether the IMMACT amendments eliminating the automatic stay for aliens convicted of an aggravated felony applied to a pre-November 1988 conviction. Id. The Ninth Circuit's review of the provisions of the ADAA delineating the consequences to aliens with convictions for aggravated felonies led it to conclude that Congress intended the definition of aggravated felony to be prospective in the context of deportation proceedings and retroactive in the context of reentry proceedings. Id. at 292. Thus, the Ninth Circuit held that the amendments abolishing the automatic stay provision for persons convicted of aggravated felonies applied only if the alien's conviction was after November 1988, the effective date of the ADAA. Id. at 294-95
 The Osorios acknowledge, as the Ninth Circuit has done, that Congress' technical amendment to the automatic stay provision in MTINA, Pub.L. No. 102-232, Sec. 306(a)(11)(B), 105 Stat. at 1751, effectively overruled Ayala-Chavez. Arthurs v. INS, 959 F.2d 142, 143 (9th Cir.1992). Nevertheless, they maintain that the technical amendment only applied to the automatic stay provision and that the interpretive analysis is still applicable to Sec. 212(c) because it has not been amended. But see, Ignacio v. INS, 955 F.2d 295, 299 (5th Cir.1992) (rejecting as unlikely to succeed on the merits Ignacio's request for review of the denial of Sec. 212 relief based on the same proposed interpretation of ADAA as his argument for an automatic stay).
 
 
 [9]
 We note, however, that the Osorios' position is that only convictions prior to November 1988 are not encompassed in the aggravated felony bar. Allowing for the serving of a five-year prison term, the Osorios' position would mean that the bar would take effect three years (in November 1993) rather than five years after the date of enactment of the amendment (November 1990)
 
 
 [10]
 As the Supreme Court noted in Chevron, we "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11