Antonio REYES–HERNANDEZ,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 95–3677.

United States Court of Appeals,
Seventh Circuit.

Argued May 16, 1996.

Decided July 17, 1996.

Javier H. Rubinstein, Gary S. Feinerman, Mayer, Brown & Platt, Chicago, IL, Lucas Guttentag, American Civil Liberties Union Foundation, New York City, Arthur A. Liberty, Park Forest, IL, for Petitioner.

Philemina Jones, Michele Y.F. Sarko, Department of Justice, Office of Immigration Litigation, Washington, DC, Samuel Der-Yeghiayan, Immigration and Naturalization Service, Chicago, IL, David M. McConnell, Stephen W. Funk, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before POSNER, Chief Judge, and ESCHBACH and ROVNER, Circuit Judges.

POSNER, Chief Judge.

The petitioner is a 45–year–old citizen of Mexico who became a lawful permanent resident of the United States in 1981 following his marriage to a U.S. citizen named Gail Reyes. He has three children who are U.S. citizens. He and his wife divorced in 1986, shortly before his conviction in a state court for unlawful possession of cocaine. He was sentenced to probation for that offense. Three years later he was arrested and convicted of a similar charge. After his release from prison the following year, he and Gail remarried and there is substantial evidence that he is fully rehabilitated and that deporting him would be a considerable hardship to Gail, who has health problems.

The petitioner conceded deportability but applied for relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). That provision has been interpreted to give the Attorney General discretionary authority to waive the deportation of deportable aliens who have been lawful permanent residents of the United States for at least seven consecutive years. *Cordoba-Chaves v. INS,* 946 F.2d 1244, 1246 (7th Cir.1991). No standard for guiding this discretion is set forth in the statute, but the Board of Immigration Appeals—the Attorney General's delegate for the exercise of the statutory discretion—considers the hardship to the deportee and other equitable factors bearing for and against the deportee's plea to be allowed to remain. *In re Marin,* 16 I. & N. Dec. 581, 585 (B.I.A.1978). An immigration judge conducted an evidentiary hearing on Reyes-Hernandez's application and concluded that it should be denied. The Board of Immigration Appeals affirmed this denial in October of last year, issuing a final order of deportation, and the petitioner seeks our review of that order pursuant to 8 U.S.C. § 1105a(a), which gives the federal courts of appeals exclusive jurisdiction to review such final orders.

On April 24 of this year, shortly before the oral argument of the appeal, the President signed into law the Antiterrorism and Effec-

tive Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214. Section 440(a) of the Act, amending section 106(a)(10) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a)(10), provides that "any final order of deportation against an alien who is deportable by reason of having committed" certain criminal offenses, including those of which this petitioner was convicted, "shall not be subject to review by any court." And section 440(d) of the new Act amends section 212(c) of the Immigration and Nationality Act to make such aliens ineligible for relief under that section. The new Act does not specify the effective date of these two sections, 440(a) and 440(d). The government, contending that they took effect the minute the President signed the Act into law, filed a motion on May 9 asking us to dismiss the petition for review on the basis of these two sections of the new Act, which if applicable disentitle the petitioner to relief as well as to any judicial review of the denial of his application for relief. We invited full briefing of the issue. The briefs have been submitted and the appeal is ripe for decision.

■ A statute that diminishes substantive rights, or remedies, or augments substantive liabilities, or sanctions, will not be applied retroactively, which is to say to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated), unless the statute provides explicitly for retroactive application. *Landgraf v. USI Film Products*, 511 U.S. 244, ———— ——, 114 S.Ct. 1483, 1498–1502, 128 L.Ed.2d 229 (1994). This means that (with the same qualification—the lack of a clear statement in the legislation that it is to be applied retroactively) such a statute will not be applied to pending cases, because a pending case will, with the exception of a suit to enjoin a continuing or prospective harm, have grown out of events completed before the case began. In contrast, jurisdictional and procedural provisions normally are applied to pending cases despite the absence of a clear statement of legislative intent to do so. *Id.* at ———— ——, 114 S.Ct. at 1501–02. People normally don't rely on such provisions in planning and conducting the affairs of life, and so the reliance interest which is the foundation of the interpretive

principle limiting retroactive application is not engaged. This is in general, however, not in every case. *Id.* at —— n. 29, 114 S.Ct. at 1502 n. 29. The test of the interpretive principle laid down in *Landgraf* is unitary. It is whether "the new provision attaches new legal consequences to events completed before its enactment." *Id.* at ——, 114 S.Ct. at 1499. If a new procedural or jurisdictional provision would if applied in a pending case attach a new legal consequence to a completed event, then it will not be applied in that case unless Congress has made clear its intention that it shall apply.

■ Reyes–Hernandez conceded deportability knowing that he would have a shot at section 212(c) relief and that if he were turned down for such relief by the immigration judge and the Board of Immigration Appeals he could have a go at this court, which has on a nontrivial number of occasions vacated the Board's denial of section 212(c) relief and remanded for further proceedings. E.g., *Cortes–Castillo v. INS*, 997 F.2d 1199, 1201–03 (7th Cir.1993); *Espinoza v. INS*, 991 F.2d 1294 (7th Cir.1993); *Akinyemi v. INS*, 969 F.2d 285 (7th Cir.1992). Section 440(d) of the new Act extinguished Reyes–Hernandez's section 212(c) option entirely, if the section is applied retroactively, and section 440(a) extinguished the included option of seeking judicial relief from the Board's denial of the section 212(c) petition. Had Reyes–Hernandez known that either or both routes were closed he might have contested deportability, with what success we do not know.

Considering the fell consequences of deportation, especially in cases of exceptional hardship, which are precisely the cases in which an appeal to section 212(c) would have a chance of success, we think it unlikely that Congress intended to mousetrap aliens into conceding deportability by holding out to them the hope of relief under section 212(c) only to dash that hope after they had conceded deportability. No such ignoble intention appears in the statute. Its absence is determinative under *Landgraf* because to make the concession of deportability a bar to relief under section 212(c) would be to attach

a new legal consequence to the concession, an event that occurred before the new law came into existence.

We hold that sections 440(a) and (d) do not apply to cases in which deportability was conceded before the Antiterrorism and Effective Death Penalty Act became law, provided that the applicant for discretionary relief would have had at least a colorable defense to deportability; for if not, he lost nothing by conceding deportability. But we do not understand the government to be making an issue of this point.

There is possible tension, but no direct conflict, between our holding and that of the Fifth Circuit's recent decision in *Mendez–Rosas v. INS*, 87 F.3d 672 (5th Cir.1996) (per curiam). Like this, it was a case in which deportability was conceded; yet the court held that section 440(a) was applicable retroactively, blocking judicial review of the denial of relief under section 212(c). But there is no reference in the opinion (which is very brief) to mousetrapping; and, so far as appears, the case falls under the proviso in our preceding paragraph that judicial review is barred if the petitioner "does not challenge the fact that he is an alien properly found deportable." 87 F.3d at 676. Our petitioner, in contrast, does not admit that he would have conceded deportability (or been found deportable) even if he had known that he could not obtain judicial review of the denial of discretionary relief from deportation.

Whether sections 440(a) and (d) apply to cases in which deportability was determined in a contested proceeding rather than conceded is not a question that we need address in this case, nor the applicability of the new provisions to criminal convictions or criminal acts that occurred before the Act was passed or the constitutionality of the relevant provisions of the Act in cases to which the provisions apply. They do not apply to this case.

■ Having satisfied ourselves that we have jurisdiction, we turn to the merits. The test that the Board uses to determine whether to grant relief from deportation under section 212(c) is equitable in nature, *Dashto v. INS*, 59 F.3d 697, 702–03 (7th Cir.1995); *In re Edwards*, Interim Dec. No. 3134 (B.I.A. 1990), and if the Board considers all the factors that it has said are relevant in applying the test the balance that it strikes cannot be disturbed by the reviewing court unless irrational or unreasoned. *Salameda v. INS*, 70 F.3d 447, 451–52 (7th Cir.1995); *Groza v. INS*, 30 F.3d 814, 818 (7th Cir.1994); *Bastanipour v. INS*, 980 F.2d 1129 (7th Cir.1992). In this case the immigration judge, whose decision the Board essentially adopted as its own, considered the claims of hardship presented by the petitioner and the evidence of his rehabilitation but concluded that the serious, recent, and repeated character of the petitioner's criminal violations outweighed the equities in favor of allowing him to remain in the United States. Given the breadth of the agency's discretion we cannot say that it acted irrationally in reaching the decision it did; and its decision is embodied in an opinion, albeit an opinion of the immigration judge rather than of the Board itself (the Board's opinion is only two pages long), that reflects a reasoned although not elaborate or compelling consideration of the evidence and arguments.

We do not read our opinion in *Cortes–Castillo* as laying down a flat rule that the Board may not adopt the opinion of the immigration judge. So read, it would be flatly inconsistent with our decisions in *Castaneda–Suarez v. INS*, 993 F.2d 142, 146 (7th Cir.1993), and *Guentchev v. INS*, 77 F.3d 1036, 1038 (7th Cir.1996), both of which reject any such rule. We sometimes adopt the opinion of the district court in cases that we review, so why not the Board? If the first-instance trier of fact has touched all the bases in his opinion, the reviewing tribunal is not required to write its own opinion. *Id.*; *Maashio v. INS*, 45 F.3d 1235, 1238–39 (8th Cir.1995). The opinion in *Cortes–Castillo* does say that it was not enough for the Board just to summarize the immigration judge's findings. 997 F.2d at 1203. But it is apparent that the reason it was not enough was that the Board had failed to consider the new evidence that the petitioner had presented to it. See *id.*

■ Which brings us to the last issue. The hearing before the immigration judge was conducted in 1991 but the appeal did not reach the Board until 1995. The petitioner's lawyer filed along with his brief on appeal what he called a "supplemental brief" that

contained evidence concerning Reyes–Hernandez's activities since the hearing. The evidence supported his contention that he had been rehabilitated. It showed that he was no longer taking drugs or drinking, was employed full time, and was doing volunteer work to help prevent other people from becoming addicts. The Board refused to consider the new evidence. Its ground was that the petitioner should have filed a motion with the Board either to supplement the record before the Board or to remand the case to the immigration judge for the reception of the new evidence. Although the Board has the power to receive evidence, *Hazzard v. INS*, 951 F.2d 435, 440 (1st Cir.1991), it operates as an appellate body and its practice therefore is not to accept a tender of evidence (or if it does, not to determine its weight in the first instance) but instead, if it thinks the new evidence might change the outcome, to remand the case to the immigration judge for the reception and consideration of the evidence. *In re Coelho*, Interim Dec. No. 3172 (B.I.A.1992). This is a reasonable practice, corresponding to the well-nigh universal practice of appellate tribunals both judicial and administrative, and it is well known to the immigration bar. The Board was not required to deviate from its customary practice in this case, and, what is more, it stated in its opinion (and has repeated to us) that Reyes–Hernandez can still move to reopen the 212(c) proceeding on the basis of new evidence that could not have been submitted at the original hearing and that if considered would be likely to change the result. *INS v. Abudu*, 485 U.S. 94, 105, 108 S.Ct. 904, 912, 99 L.Ed.2d 90 (1988); *Henry v. INS*, 8 F.3d 426, 433, 438–39 (7th Cir. 1993); *Johnson v. INS*, 962 F.2d 574, 576–78 (7th Cir.1992); see 8 C.F.R. § 3.2. So there has been no violation of his procedural rights. It would be different if the Board had admitted the evidence and then affirmed the immigration judge without considering the evidence—evidence that the immigration judge could not have considered. Then it would be a case like *Cortes–Castillo*.

The petition for review is

DENIED.