United States Court of Appeals United States Court of Appeals
For the First Circuit



No. 96-1194

ALFREDO A. KOLSTER,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.



PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS 



Before

Boudin, Circuit Judge, 
Bownes, Senior Circuit Judge, 
Lynch, Circuit Judge. 



Lee Gelernt and Richard L. Iandoli, with whom Iandoli & 
Associates, Lucas Guttentag, Letitia Volpp, and American Civil 
Liberties Union were on brief for petitioner. 
Linda S. Wendlandt, with whom Frank W. Hunger, Assistant Attorney 
General, Civil Division, Michael P. Lindemann, Assistant Director, 
Office of Immigration Litigation, and Lisa Arnold, Attorney, Office of 
Immigration Litigation, were on brief for respondent.

December 4, 1996


LYNCH, Circuit Judge. This case requires us to LYNCH, Circuit Judge. 

determine whether section 440(a) of the Antiterrorism and

Effective Death Penalty Act (AEDPA), enacted after this

petition was filed, applies here. Alfredo Kolster, an alien

under deportation order, argues that if it does apply, it is

unconstitutional. Section 440(a) of AEDPA, which was signed

into law on April 24, 1996, prohibits judicial review of

deportation orders issued against aliens who have committed

certain types of crimes. Kolster had previously pled guilty

to such a crime.

In a petition filed with this court on February 28,

1996, Kolster seeks review of a Board of Immigration Appeals

(BIA) decision that he is ineligible, under the BIA's

interpretation of the Immigration and Nationality Act (INA),

for discretionary relief from deportation. He argues that

the BIA erroneously interpreted the statute to require seven

years of lawful permanent residence by the alien to be

eligible for the relief from deportation afforded by section

212(c) of the INA. 

The Immigration and Naturalization Service (INS)

has moved to dismiss this action, arguing that section 440(a)

of AEDPA operates immediately to divest this court of

jurisdiction to hear this petition for review. Kolster

responds that section 440(a) does not apply to cases pending

on the date of AEDPA's enactment, and that, if the statute

-2- 2

applies, its preclusion of judicial review violates the Due

Process Clause and Article III of the Constitution.

We find that section 440(a) does apply to

petitions, like Kolster's, which were pending on the date of

AEDPA's enactment. Because at least the habeas corpus review

provided by the Constitution remains available to aliens

covered by section 440(a), we find that the prohibition of

judicial review in section 440(a) does not offend the

Constitution. Accordingly, we dismiss Kolster's petition for

review under the Immigration and Nationality Act for lack of

jurisdiction.

I.

Alfredo Kolster, a Venezuelan citizen, first

entered the United States in 1980 to attend high school in

New York. He remained in the United States through high

school and college, earning a B.S. from Boston University in

September, 1988. During this time, Kolster had a F-1, or

foreign student, visa.

On September 11, 1988, after a brief visit to

Venezuela, Kolster re-entered the United States as a member

of the immediate family of an employee of an international

organization. His mother worked for the Pan-American Health

Organization. On August 24, 1989, Kolster became a lawful

permanent resident of the United States. From 1989 to 1991,

-3- 3

Kolster lived in the Boston area and worked at various sales

jobs.

In 1991, Kolster was indicted in federal court in

Massachusetts for conspiracy to possess cocaine with intent

to distribute. He later pled guilty and was sentenced to

twenty-four months' imprisonment. The sentencing judge

recommended that Kolster not be deported upon his release

from custody.

Nonetheless, while Kolster was incarcerated, the

INS ordered him to show cause why he should not be deported.

The INS charged that Kolster was deportable pursuant to

section 241(a)(2)(B)(i) of the INA, which applies to aliens

convicted of controlled substance offenses, and pursuant to

section 241(a)(2)(A)(iii), which applies to aliens convicted

of aggravated felonies. See 8 U.S.C. 1251 (a). 

On April 5, 1994, Kolster had a hearing before an

Immigration Judge. At that hearing, Kolster, through

counsel, conceded deportability on the grounds charged by the

INS. However, he also requested a continuance in order to

apply for a waiver of deportation pursuant to section 212(c)

of the INA. Section 212(c) gives the Attorney General the

discretionary authority to waive the exclusion of otherwise

excludable aliens, see 8 U.S.C. 1182(c).1 A longstanding 

 

1. Section 212(c) of the INA, 8 U.S.C. 1182(c), prior to
amendment by AEDPA, read in relevant part:

-4- 4

interpretation of that section extends the Attorney General's

discretion to otherwise deportable aliens. See, e.g., Joseph 

v. INS, 909 F.2d 605, 606 n.1 (1st Cir. 1990). 

The Immigration Judge found "based on [Kolster's]

admission, his concession of deportability through counsel,

and the documentary evidence of record that deportability has

been established by clear, convincing and unequivocal

evidence." As to Kolster's request for a continuance, the

Immigration Judge found that Kolster did not have statutory

eligibility for section 212(c) relief, and therefore

pretermitted his application for a waiver of deportation.

Accordingly, she ordered Kolster deported to Venezuela.

On January 30, 1996, the BIA affirmed the order of

deportation. The Board agreed with the decision to pretermit

Kolster's application for a section 212(c) waiver because

Kolster had "not been a lawful permanent resident of the

United States for seven years as is required."

Kolster filed a petition for review with this court

on February 28, 1996. At that time, 8 U.S.C. 1105a(a)

 

Aliens lawfully admitted for permanent
residence . . . who are returning to a
lawful unrelinquished domicile of seven
consecutive years, may be admitted in the
discretion of the Attorney General.

-5- 5

provided for judicial review of final orders of deportation.2

Kolster argued that the BIA has erred in interpreting section

212(c)'s requirement of seven years of "lawful unrelinquished

domicile" to mean seven years of "lawful permanent

residence." Kolster points to a circuit split on this

statutory issue, noting that some courts of appeals have

rejected the BIA's construction of section 212(c). See, e.g, 

Lok v. INS, 548 F.2d 37 (2d Cir. 1977). 

On April 24, 1996, while this petition was pending,

President Clinton signed into law the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-

132, 110 Stat. 1214. Section 440(a) of AEDPA, which amends

Section 106(a)(10) of the INA, 8 U.S.C. 1105(a)(10),

provides:

Any final order of deportation against an
alien who is deportable by reason of
having committed [certain crimes,
including aggravated felonies and
controlled substance offenses] shall not
be subject to review by any court.

On June 10, 1996, the INS moved to dismiss this petition for

review, arguing that, in light of section 440(a), this court

 

2. 8 U.S.C. 1105a(a) provided that the procedures
described therein "shall apply to, and shall be the sole and
exclusive procedure for, the judicial review of all final
orders of deportation heretofore or hereafter made against
aliens within the United States."

-6- 6

lacked subject matter jurisdiction to hear this case.3

Kolster responds that AEDPA does not specify an effective

date for section 440(a), and that statutes are generally

presumed not to have retroactive effect. Additionally, he

contends that preclusion of judicial review violates the Due

Process Clause and Article III.

II.

A. Section 440(a)'s Applicability to Pending Petitions 

The Supreme Court's decision in Landgraf v. USI 

Film Products, 114 S. Ct. 1483 (1994), provides a framework 

for determining whether a statute should be applied to cases

pending at the time of enactment. This is initially a

question of legislative intent, not a constitutional

question. First, the court must look at the statutory text

and determine whether it "manifests an intent" that the

statute should be applied to pending cases. Id. at 1492. If 

the court determines that Congress did not "expressly

 

3. The INS originally also argued that this petition sought
relief -- a waiver of deportation under section 212(c) --
which petitioner was no longer eligible to receive. Section
440(d) of AEDPA amends section 212(c) so that it no longer
applies to aliens who are deportable by reason of having
committed certain crimes, including controlled substance
offenses and aggravated felonies. The Attorney General is
currently considering whether to apply section 440(d) to
section 212(c) applications filed before April 24, 1996. See 
In re Soriano, Order of the Attorney General (Sept. 12, 
1996), vacating Int. Dec. No. 3289 (BIA June 27, 1996, 
amended July 18, 1996). Because we find that the court does
not have jurisdiction to hear this petition, we do not reach
the question of whether section 440(d) applies to pending
applications. 

-7- 7

prescribe[] the statute's proper reach," the court presumes

that Congress acts consistently with a series of "judicial

default rules." Id. at 1505. In applying these rules, the 

court must:

determine whether the new statute would
have retroactive effect, i.e., whether it
would impair rights a party possessed
when he acted, increase a party's
liability for past conduct, or impose new
duties with respect to transactions
already completed.

Id. For jurisdictional statutes, the presumption is in favor 

of immediate application, because "[a]pplication of a new

jurisdictional rule usually 'takes away no substantive right

but simply changes the tribunal that is to hear the case'"

and because "jurisdictional statutes 'speak to the power of

the court rather than to the rights or obligations of the

parties.'" Id. at 1502 (quoting Hallowell v. Commons, 239 

U.S. 506, 508 (1916) and Republic Nat'l Bank v. United 

States, 113 S. Ct. 554, 565 (1992)(Thomas, J., concurring)). 

The first inquiry is thus whether Congress has

expressed a clear intent as to whether section 440(a) applies

to cases pending on the date of enactment. There is no

explicit textual reference to an effective date for section

440(a). Effective dates are provided for some other sections

of the AEDPA, including section 440(e), which adds offenses

to the INA definition of "aggravated felony." See 8 U.S.C.  

1101 note. However, those sections are "unrelated to

-8- 8

jurisdiction, [and] are too far removed from judicial review

under 8 U.S.C. 1105a(a) to impute an effective date for

section 440(a)." Duldulao v. INS, 90 F.3d 396, 398 n.2 (9th 

Cir. 1996). Accordingly, we find that Congress has not

expressly addressed the issue of section 440(a)'s

applicability to pending cases.

The next inquiry under the "judicial default rule"

approach to determining congressional intent is whether

440(a) has a retroactive effect upon petitioner's substantive

rights, duties, or obligations. Landgraf, 114 S. Ct. at 

1505. If it does not, then we apply the rule that

jurisdictional statutes apply to pending cases. Id. If the 

statute would have such retroactive effects, it will not be

applied, "absent clear congressional intent favoring such a

result." Id.  

Kolster argues that Landgraf assumes that 

jurisdictional statutes only effect a change in the tribunal

that will hear the case, and that the presumption in favor of

immediate application is therefore inapposite where the

statute's effect is to deprive a party of access to any

judicial review at all. It is true that Landgraf speaks of 

jurisdictional statutes as usually "'simply chang[ing] the

tribunal that is to hear the case.'" Landgraf, 114 S. Ct. at 

1502 (quoting Hallowell, 239 U.S. at 508).  

-9- 9

However, as the INS points out, Landgraf's explicit 

reliance on Hallowell is instructive here. In Hallowell, the 

Supreme Court approved the application to pending cases of a

statute that deprived the federal district courts of

jurisdiction over certain Indian probate disputes and vested

"final and conclusive" authority in the Secretary of the

Interior. 239 U.S. at 508. Section 440(a) similarly vests

final authority in an administrative tribunal, the BIA.

Landgraf's citation to Hallowell makes us doubtful, absent 

more guidance from the Supreme Court, that a jurisdictional

change from an Article III court to an administrative

decisionmaker, in itself, affects the retroactivity analysis,

whatever its effect on the ultimate constitutional analysis.

See Hincapie-Nieto v. INS, 92 F.3d 27, 29 (2nd Cir. 1996). 

Our inquiry must therefore focus on the facts

concerning whether Kolster's substantive rights or

obligations or duties have been changed by the deprivation of

judicial review. Kolster suggests that his guilty plea and

concession of deportability were made with the expectation

that he could apply for a section 212(c) waiver of

deportation.

The Seventh Circuit gave credence, on different

facts, to a similar argument in Reyes-Hernandez v. INS, 89 

F.3d 490, 492 (7th Cir. 1996). There, the BIA had affirmed

the denial of petitioner's application for section 212(c)

-10- 10

relief, and the petitioner sought judicial review. The

Seventh Circuit found that, when petitioner conceded

deportability, he knew that, if the immigration judge and the

BIA turned down his request for section 212(c) relief, he

"could have a go at" judicial review. Id. at 492. Had 

petitioner known that judicial review would be foreclosed,

"he might have contested deportability." Id. The immediate 

application of section 440(a) would thus "attach a new legal

consequence to the concession" of deportability. Id. at 492- 

93. Accordingly, the Seventh Circuit held that section

440(a) did not apply to cases in which deportability was

conceded prior to AEDPA's enactment, "provided that the

applicant for discretionary relief would have had at least a

colorable defense to deportability." Id. 

In contrast to the Seventh Circuit, it is unclear

to us that deportability, which is a largely mechanical

determination based on facts which may often be objectively

ascertained, would realistically be conceded because of the

availability of discretionary relief or of judicial review of

the denial of such relief. See Hincapie-Nieto, 92 F.3d at 30 

("It is far more likely that deportability is conceded

because there is no conceivable defense available."). In any

case, here the Immigration Judge explicitly based her finding

of deportability on the documentary evidence of Kolster's

drug offense conviction, as well as on his concession.

-11- 11

Tellingly, Kolster does not argue that he in fact had a

colorable defense to deportability. 

As to his guilty plea, we have no reason to think

it was induced by reliance on discretionary relief under

section 212(c). By Kolster's own calculations, his "lawful

domicile" for section 212(c) purposes only dates back to

September 11, 1988. Thus, even under the interpretation of

section 212(c) that he urges, as of September 2, 1992, the

date of his guilty plea, Kolster had only accrued four years

of lawful domicile. He was, as a result, three years away

from being eligible for section 212(c) relief, rendering it

highly unlikely that his guilty plea was predicated on the

availability of such relief.

Moreover, this court and others have previously

found that aliens do not have a cognizable reliance interest

in the availability of discretionary section 212(c) relief.

See, e.g., Scheidemann v. INS, 83 F.3d 1517, 1523 (3d Cir. 

1996); Campos v. INS, 16 F.3d 118 (6th Cir. 1994); Barreiro 

v. INS, 989 F.2d 62 (1st Cir. 1993). At issue in those cases 

was an amendment to section 212(c) which made aliens who had

served at least five years' imprisonment for an aggravated

felony ineligible for discretionary relief. See, e.g, 

Barreiro, 989 F.2d at 62. In Barreiro, this court found that 

the amendment's application to prisoners whose convictions

and prison terms predated its enactment did not violate the

-12- 12

presumption against retroactivity. Id. at 64. "The 

presumption against a retroactive interpretation is to give

fair warning so that a party may avoid consequences. This is

scarcely a situation calling for any such warning." Id.  

Similar logic applies here. As the Third Circuit

said in Schiedemann, petitioner's "conduct clearly subjected 

him to deportation as well as criminal sanctions, and . . .

[section] 212(c), as it then existed, offered relief from the

former only at the unfettered discretion of the Attorney

General . . . ." Schiedemann, 83 F.3d at 1523. The 

availability of purely discretionary relief does not create

substantive rights in otherwise deportable criminal aliens,

nor does the availability of judicial review of denial of

that discretionary relief.

We find that Kolster's substantive rights,

liabilities, and duties are not retroactively impaired by the

preclusion of judicial review. We note that five of the six

other circuit courts to consider this question have found

that section 440(a) applies upon enactment. See Salazar-Haro 

v. INS, 95 F.3d 309 (3d Cir. 1996); Hincapie-Nieto v. INS, 92 

F.3d 27 (2d Cir. 1996); Qasguargis v. INS, 91 F.3d 788 (6th 

Cir. 1996); Duldulao v. INS, 90 F.3d 396 (9th Cir. 1996); 

Mendez-Rosas v. INS, 87 F.3d 672 (5th Cir. 1996). We hold, 

under the "judicial default rules" that are articulated in

Landgraf and which provide a guide to legislative intent, 

-13- 13

that section 440(a)'s deprivation of jurisdiction to this

court is effective upon enactment.

B. The Constitutional Challenge to Section 440(a) 

Kolster contends that section 440(a)'s preclusion

of judicial review of final orders of deportation based on

commission of certain crimes violates both the Due Process

Clause and the principles of separation of powers embodied in

Article III. Kolster argues that deportation deprives him of

a constitutionally protected liberty interest, and that the

Due Process Clause thus guarantees him certain procedural

protections, including judicial review. Additionally,

Kolster argues that section 440(a), by giving "the Executive

Branch the power to act as legal arbiter of its own conduct,"

prevents the judiciary from fulfilling its Article III "role

as a 'check' on the actions of the two other branches."

The INS responds that section 440(a) is "clearly a

constitutional exercise of Congress' well-established power

to provide or withhold jurisdiction from statutorily-created

courts, as well as its plenary power over matters of

immigration and naturalization." Because we consider this to

be a serious question, this court requested additional

briefing on whether habeas corpus review remains available to

aliens who are covered by section 440(a)'s bar on judicial

review.

-14- 14

The question of section 440(a)'s constitutionality

is not wholly resolved by reference to Congress' plenary

power over matters concerning immigration. While it is true

that "over no conceivable subject is the legislative power of

Congress more complete," Reno v. Flores, 507 U.S. 292, 305 

(1996)(citation omitted), the Supreme Court has also said

that:

once an alien gains admission to our
country and begins to develop the ties
that go with permanent residence his
constitutional status changes
accordingly. Our cases have frequently
suggested that a continuously present
alien is entitled to a fair hearing when
threatened with deportation, and,
although we have only rarely held that
the procedures provided by the executive
were inadequate, we developed the rule
that a continuously present permanent
resident alien has a right to due process
in such a situation. 

Landon v. Plasencia, 459 U.S. 21, 32 (1982)(internal 

citations omitted). Given this recognition that continuously

present aliens, like Kolster, do have some constitutional

status, our analysis of whether judicial review is

constitutionally required here cannot turn on the fact that

section 440(a) only affects the rights of such aliens. See 

Salazar-Haro, 95 F.3d at 311. 

The constitutional question at the heart of

Kolster's claim may be stated as follows: Where the

consequences of the decision are the deportation of a

continuously present alien, may Congress, by precluding

-15- 15

judicial review of final deportation orders, place final

authority over a question of law -- here, the meaning of

section 212(c)'s phrase "lawful unrelinquished domicile" --

in the hands of an administrative body (i.e., the BIA), or

does the Constitution require an independent judicial

determination of questions of law, or at least of whether the

agency's determination was a reasonable construction of the

statute? See Fallon et al., Hart & Wechsler's The Federal 

Courts and The Federal System 397-98 (4th ed. 1996); 

Monaghan, Marbury and the Administrative State, 83 Colum. L. 

Rev. 1, 28-34 (1983); cf. Chevron USA Inc. v. Natural 

Resources Defense Council, 467 U.S. 837, 842-43 (1984). Were 

no other avenues of judicial review available to aliens like

petitioner, we would be required to resolve that thorny

question here.

However, the INS has agreed that, although AEDPA

has repealed the previous statutory authorization for habeas

review of final deportation orders contained in section

106(a)(10) of the INA, any habeas review that is required by

the Constitution remains available.4 Kolster contends that

the repeal of the specific INA habeas provision does not

 

4. The INS's precise position is that such constitutionally
compelled habeas review, or its equivalent, remains, and that
we need not here determine "whether the jurisdictional basis
for 'constitutional habeas' review of a deportation order
would be 28 U.S.C. 2241, section 1651, or a 'free standing'
Constitutional authorization." For present purposes, we
describe the alternatives as "habeas review."

-16- 16

impair the ability of the federal courts to grant writs of

habeas corpus under the general habeas provision, 28 U.S.C. 

2241, and that such habeas review would encompass questions

of law like the one Kolster raises here. Cf. Felker v. 

Turpin, 116 S. Ct. 2333, 2339 (1996) (declining to find 

jurisdictional repeal by implication).

Because the INS acknowledges that some avenue for

judicial review remains available to address core

constitutional and jurisdictional concerns, we find that

section 440(a)'s repeal of our jurisdiction to review final

deportation orders does not raise a constitutional issue. As

the nature and scope of habeas review available to aliens

like Kolster is not properly before us at this time, we do

not reach those questions. See Hincapie-Nieto, 92 F.2d at 

31.

Accordingly, the petition for review is dismissed

for lack of jurisdiction.

-17- 17