# Authority of the Attorney General to Grant Discretionary Relief from Deportation Under Section 212(c) of the Immigration and Nationality Act as Amended by the Antiterrorism and Effective Death Penalty Act of 1996

The amendment of section 212(c) of the Immigration and Nationality Act by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 deprived the Attorney General of the authority to grant discretionary relief from deportation for aliens who committed certain crimes. Section 440(d) applies to section 212(c) applications for discretionary relief pending on the effective date of AEDPA *

February 21, 1997

## IN DEPORTATION PROCEEDINGS

At the request of the Commissioner of Immigration and Naturalization, the Board of Immigration Appeals ("BIA") referred its decision in this matter pursuant to 8 C.F.R. § 3.1(h)(iii) (1996). Respondent Soriano, a native and citizen of the Dominican Republic, was admitted to the United States in 1985 as a lawful permanent resident alien. In 1992, he was convicted under New York law of the offense of an attempted sale of a controlled substance. Based on that conviction, the Immigration and Naturalization Service ("INS") instituted deportation proceedings against him in 1994.

In 1995, Respondent sought the relief of waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994). Section 212(c) grants the Attorney General discretionary authority to admit otherwise excludable permanent resident aliens. Although the statute expressly authorizes only a waiver of exclusion, courts have interpreted it to authorize relief in deportation proceedings as well. See Francis v. INS, 532 F.2d 268, 273 (2d Cir. 1976); De Osorio v. INS, 10 F.3d 1034, 1039 (4th Cir. 1993). The Immigration Judge found that the respondent was eligible for that relief, but, in the exercise of discretion, denied his application. See Matter of Soriano, File No. A39 186 067 (Executive Office for Immigration Review ("EOIR"), Office of the Immigra-

---

* Editor's Note: In this opinion the Attorney General applied the two-step test for analyzing the temporal scope of a statute set forth in the Supreme Court's decision in Landgraf v. USI Film Products, 511 U.S. 244 (1994). The Attorney General concluded that under the first step of Landgraf, which asks whether Congress has expressly prescribed the temporal reach of a statute, Congress did not specify whether section 440(d) should be applied to section 212(c) applications pending on the effective date of AEDPA. After the Attorney General handed down this opinion, the majority of the federal courts of appeals disagreed with the Attorney General's conclusion. Acknowledging this disagreement, the Attorney General acquiesced on a nationwide basis in the decisions of the courts of appeals that disagreed with her decision See Section 212(c) Relief for Certain Aliens in Deportation Proceedings Before April 24, 1996, 66 Fed. Reg 6436 (Jan 22, 2001). Because nearly all of the courts of appeals decided this issue under the first step of Landgraf, these courts did not reach the Attorney General's determination under the second step of Landgraf, discussed in this opinion, that statutes affecting jurisdiction and prospective relief generally do not raise retroactivity concerns because such statutes do not impair a right, increase a liability, or impose new duties on criminal aliens. For this reason, this opinion is still relevant to such questions

tion Judge, Oct. 12, 1995). Respondent appealed from that decision on October 23, 1995.

On April 24, 1996, while Respondent's appeal was pending, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 ("AEDPA"). Section 440(d) of AEDPA amended INA § 212(c). The amendment provides in relevant part that section 212(c) relief shall not be available to aliens who are deportable by reason of having committed certain specified criminal offenses. Respondent's offense is among those specified.[1] Thus, a threshold issue on appeal was whether the amendment to section 212(c) applied to foreclose Respondent's application for relief from deportation.[2]

The BIA was unanimous in concluding that AEDPA § 440(d) was effective immediately upon enactment on April 24, 1996. The BIA was divided, however, as to whether AEDPA § 440(d) applied to applications for section 212(c) relief that were pending on the effective date of AEDPA. Six members of the BIA concluded that Congress did not intend that aliens who had applications pending on April 24, 1996, should be barred from seeking that relief. Accordingly, they found that Respondent continued to be eligible for waiver of inadmissibility.[3] Five members of the BIA dissented. They would have held that section 440(d) did apply to pending applications for section 212(c) relief. One member of the BIA concurred in part and dissented in part. That member agreed with the majority that AEDPA § 440(d) should not be applied to pending section 212(c) applications, but would also have declined to apply it to other cases, such as those of permanent resident aliens subject to an Order to Show Cause.

For the reasons stated below, I conclude that the amendment to INA § 212(c) made by AEDPA § 440(d) applies to proceedings such as Respondent's, in which an application for relief under section 212(c) was pending when AEDPA was signed into law.[4]

---

[1] The amendment provides in relevant part that section 212(c) relief shall not be available to an alien who "is deportable by reason of having committed any criminal offense covered in [INA] section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)" 110 Stat. at 1277, as amended by section 306(d) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Department of Defense Appropriations Act, 1997, Pub. L. No. 104–208, § 306(d), 110 Stat 3009–546, 3009–612. Respondent's offense is covered by section 241(a)(2)(A)(iii) and (B) of the INA. *See* 8 U S C § 1251 (1994)

[2] It is important to note as a threshold matter that deportation proceedings are civil actions, and, thus, the constitutional bars to retroactive application of penal legislation do not apply *INS v Lopez-Mendoza*, 468 U S 1032, 1038 (1984); *Harisiades v. Shaughnessy*, 342 U S 580, 594–95 (1952) Moreover, it is well settled that Congress may legislate to alter the immigration consequences of past criminal convictions or acts *Lehman v Carson*, 353 U.S 685, 690 (1957); *Mulcahey v. Catalanotte*, 353 U.S. 692, 694 (1957).

[3] The majority agreed with the Immigration Judge's conclusions that Respondent's attempted criminal sale of cocaine, together with his three other drug-related felonies, required a demonstration of outstanding equities before he could receive a waiver of inadmissibility, and that Respondent had not made such a demonstration

[4] By Order dated September 12, 1996, I granted the request for review and vacated the opinion of the BIA in Matter of Bartolome Jhonny Soriano (A39 186 067)

## · *Analysis*

In *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), the Supreme Court sought to "reconcile two seemingly contradictory statements found in [the Court's] decisions concerning the effect of intervening changes in the law": that " 'a court is to apply the law in effect at the time it renders its decision,' " and that " '[r]etroactivity is not favored in the law.' " *Id.* at 264 (citations omitted).

The Court set forth the method for analyzing the temporal reach of a statute:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280.

In the present case, nothing in the language of the newly enacted statute, AEDPA § 440(d), specifies either that it is to be applied in pending deportation proceedings, or that it is not to be. Thus, the next task is to determine whether the statute would be given retroactive effect if applied in pending deportation proceedings. In this regard, the Court observed that "[w]hile statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task." *Id.* at 268. A statute does not operate retroactively "merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 269–70 (citation and footnote omitted).

Of particular relevance here, the Court suggested that changes in the law affecting prospective relief, as well as those affecting jurisdiction and procedure, are generally not to be considered "retroactive." Specifically, the Court said:

> Even absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. Thus, in *American Steel Foundries v. Tri-City*

3

> *Central Trades Council,* 257 U.S. 184 (1921), we held that § 20
> of the Clayton Act, enacted while the case was pending on appeal,
> governed the propriety of injunctive relief against labor picketing.
> In remanding the suit for application of the intervening statute, we
> observed that "relief by injunction operates *in futuro,*" and that
> the plaintiff had no "vested right" in the decree entered by the
> trial court.

*Id.* at 273–74.

Similarly, the three separately concurring Justices (Scalia, J., joined by Kennedy and Thomas, JJ., concurring), emphasized that intervening law was typically applied to pending applications for prospective relief:

> Courts traditionally withhold requested injunctions that are not
> authorized by then-current law, even if they were authorized at the
> time suit commenced and at the time the primary conduct sought
> to be enjoined was first engaged in. The reason, which has nothing
> to do with whether it is possible to have a vested right to prospec-
> tive relief, is that "[o]bviously, this form of relief operated only
> *in futuro.*" Since the purpose of prospective relief is to affect the
> future rather than to remedy the past, the relevant time for judging
> its retroactivity is the very moment at which it is ordered.

*Id.* at 293 (citations omitted).

Both the majority and concurring Justices identified another set of intervening statutes — those that confer or eliminate jurisdiction — that do not operate retro-actively merely because they are applied to conduct arising before the statute's enactment. Justice Scalia explained the Court's "consistent practice of giving immediate effect to statutes that alter a court's jurisdiction . . . by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power — so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised." *Landgraf,* 511 U.S. at 292–93 (Scalia, J., concurring).[5]

In summary, under *Landgraf,* a new statute does not have retroactive effect if it does not impair rights a party possessed when he or she acted, increase a party's liability for past conduct, or impose new duties with respect to transactions

---

[5] The single dissenting Justice in *Landgraf* was of the opinion that the presumption against retroactive legislation, "which serves to protect settled expectations," and which "is grounded in a respect for vested rights," "need not be applied to remedial legislation     that does not proscribe any conduct that was previously legal " *Id.* at 296–97 (Blackmun, J., dissenting) (citing *Sampeyreac v United States,* 32 U.S. (7 Pet ) 222, 238 (1833) ("Almost every law, by providing a new remedy, affects and operates upon causes of action existing at the time the law is passed") *and Hastings v Earth Satellite Corp.,* 628 F.2d 85, 93 (D C Cir.) ("Modification of remedy merely adjusts the extent, or method of enforcement, of liability in instances in which the possibility of liability previously was known."), *cert. denied,* 449 U S. 905 (1980)).

already completed. More specifically, an intervening statute that either alters juris-diction or affects prospective injunctive relief generally does not raise retroactivity concerns, and, thus, presumptively is to be applied in pending cases. As discussed below, the application of AEDPA § 440(d) to pending applications for section 212(c) relief does not impair a right, increase a liability, or impose new duties on criminal aliens. The consequences of Respondent's conduct remain the same before and after the passage of AEDPA: criminal sanctions and deportation. AEDPA § 440(d) is best understood as Congress's withdrawal of the Attorney General's authority to grant prospective relief. Thus, the statute alters both juris-diction and the availability of future relief, and should be applied to pending applications for relief.[6]

The relief sought in a section 212(c) application, waiver of inadmissibility, is prospective in nature. A successful applicant for relief under section 212(c) will not, as a matter of the sovereign's discretion, be deported from the country, even though his or her past criminal convictions would otherwise lead to deportation. *See INS v. Lopez-Mendoza*, 468 U.S. at 1038 ("The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain."); *De Osorio v. INS*, 10 F.3d at 1042 (holding that an amendment barring applications for waivers of deportations filed after the effective date of the amendment to section 212(c) is not made retroactive merely because it applies to convictions for aggravated felonies before that time: "The past aggravated felony conviction is only the prerequisite for the prospective denial of discre-tionary relief. . . . Congress did not attach additional consequences, but merely withdrew a previously available form of discretionary relief.").

Moreover, Congress's modification of section 212(c) operates to eliminate the discretionary authority of the Attorney General to grant relief in certain cases, and, thus, its effect is to remove jurisdiction. As the Solicitor General argued in the brief of the United States to the Supreme Court in *Elramly v. INS*, 73 F.3d 220 (9th Cir. 1995), *cert. granted*, 516 U.S. 1170, and *vacated*, 518 U.S. 1051 (1996), a case raising the issue whether AEDPA divested the Attorney Gen-eral of authority to grant section 212(c) relief in pending cases, "[j]ust as new 'jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties,' *Landgraf*, 511 U.S. at 274, [s]ection 212(c) speaks to the *power* of the Attorney General to waive deportation, not to any right of

---

[6] One formulation articulated in *Landgraf* for determining whether a statute operates retroactively — "whether [it] attaches new legal consequences to events completed before its enactment" — could be interpreted as compelling the conclusion that AEDPA § 440(d) should not be applied to pending applications for section 212(c) relief 511 U S. at 270. Because the statute eliminates eligibility for a previously available form of relief from the immigration consequences of a prior criminal conviction, it could be argued that it attaches new legal consequence to a prior event Elimination of a form of relief in this context, however, is not the same as the attachment of new legal consequences in the sense that the Court meant in *Landgraf* If it were, most cases in the three categories that the Court identified as not constituting retroactive application when applied to past events — statutes that alter jurisdic-tion, procedural rules, and statutes affecting the availability of prospective injunctive relief — would also have to be understood as attaching new legal consequences to prior events and, hence, constituting retroactive application

an alien to such relief.'' Supplemental Brief for the Petitioner at 18, *INS v. Elramly*, 516 U.S. 1170 (1996) (No. 95–939). The majority opinion in *Landgraf* explains the practice of applying new jurisdictional statutes to pending cases by the fact that ''a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' '' 511 U.S. at 274 (quoting *Hallowell v. Commons*, 239 U.S. 506, 508 (1916)). Here, in contrast to the cases cited by the Court, there is no alternative tribunal to which the criminal alien may petition. Even assuming that the lack of an alternative tribunal would be relevant to retroactivity analysis where a substantive right is at stake, eligibility for a congressionally created form of purely discretionary relief from the immigration consequences of a prior criminal conviction cannot properly be characterized as a substantive right.[7]

The Third Circuit's discussion of the application of an earlier amendment to section 212(c) to make an applicant ineligible for relief based on a prior criminal conviction applies equally here:

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States. Like statutes constricting the jurisdiction of a judicial body, these changes speak only to the power of a public agency. . . . Given the facts that petitioner's pre-1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that section 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of section 212(c).

*Scheidemann v. INS*, 83 F.3d 1517, 1523 (3d Cir. 1996).

The Seventh Circuit has expressed a contrary view in *Reyes-Hernandez v. INS*, 89 F.3d 490 (7th Cir. 1996), at least with respect to a narrow category of cases. In that case the petitioner had conceded deportability before the enactment of

---

[7] The concurring opinion further notes that while there may sometimes be an alternative forum, there is not always one, and even where there is, it may deny relief for some collateral reason such as a statute of limitations bar. "Our jurisdiction cases are explained, I think, by the fact that the purpose of provisions conferring or eliminating jurisdiction is to permit or forbid the exercise of judicial power — so that the relevant event for retroactivity purposes is the moment at which that power is sought to be exercised." *Landgraf*, 511 U.S. at 293 (Scalia, J. concurring)

AEDPA, when he was still eligible for section 212(c) relief. The court speculated that had the petitioner known that this relief would no longer be available to him, he might have contested deportability.

> Considering the fell consequences of deportation, especially in cases of exceptional hardship, which are precisely the cases in which an appeal to section 212(c) would have a chance of success, we think it unlikely that Congress intended to mousetrap aliens into conceding deportability by holding out to them the hope of relief under section 212(c) only to dash that hope after they had conceded deportability. No such ignoble intention appears in the statute. Its absence is determinative under *Landgraf* because to make the concession of deportability a bar to relief under section 212(c) would be to attach a new legal consequence to the concession, an event that occurred before the new law came into existence.

*Id.* at 492–93. The court held that section 440(d) of AEDPA does not apply to cases in which deportability was conceded before AEDPA became law, "provided that the applicant for discretionary relief would have had at least a colorable defense to deportability; for if not, he lost nothing by conceding deportability." *Id.* at 493.[8]

Amici curiae in the current case also emphasized the reliance aliens may have placed on the availability of section 212(c) relief. Amici argue that aliens may rely on the possibility of obtaining section 212(c) relief not only when deciding whether to contest deportability, but also when deciding whether to litigate their criminal liability or enter into a plea agreement. It is true that the majority opinion in *Landgraf* notes that "familiar considerations of fair notice, reasonable reliance, and settled expectations" are factors offering "sound guidance" in "hard cases." *Landgraf*, 511 U.S. at 270. However, the Court states expressly that a statute does not operate retroactively merely because it "upsets expectations based in prior law." *Id.* at 269.

In any event, it is difficult to see how the possibility of obtaining section 212(c) relief would affect an alien's decision whether to concede or contest deportability. First, the criteria for determining whether someone is deportable as a criminal alien are specific and fixed, and the grounds for challenging deportability are quite narrow. *See Rabiu v. INS*, 41 F.3d 879, 881 (2d Cir. 1994) (record of conviction sufficient to overcome alien's challenge to deportability); *Ortega de Robles v. INS*, 58 F.3d 1355, 1358 (9th Cir. 1995) (criminal convictions may not be collaterally challenged in deportation proceeding as ground for contesting deportability).

---

[8] The Seventh Circuit has confirmed that *Reyes-Hernandez* applies only in cases where the petitioner conceded deportability and had a colorable defense to deportability *Arevalo-Lopez v. INS*, 104 F 3d 100, 101 (7th Cir 1997)

Second, an alien need not choose between contesting deportability and seeking section 212(c) relief; an alien may pursue both.

It seems more plausible that an alien may enter a plea bargain hoping to obtain relief from deportation, but even so, the alien could not have reasonably relied upon the availability of that relief. For the past forty years, the law has been settled that Congress may legislate to alter the immigration consequences of past criminal convictions or acts. Moreover, as the Supreme Court recently unanimously reaffirmed in the context of analyzing a similar provision conferring discretionary authority upon the Attorney General, "suspension of deportation [is] . . . 'an act of grace' which is accorded pursuant to her 'unfettered discretion'. . . and [is similar to] 'a judge's power to suspend the execution of a sentence, or the President's to pardon a convict.' " *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 30 (1996) (citations omitted). Therefore, a criminal alien could not reasonably rely on the availability of section 212(c) relief in determining whether to plead guilty to a criminal offense or in determining whether to concede deportability.

Accordingly, the application of AEDPA § 440(d) to section 212(c) applications pending before the EOIR would not be retroactive. However, to eliminate even the remote possibility that an alien who had a colorable defense to deportability may have conceded deportability in reliance on the availability of section 212(c) relief, I direct the EOIR to reopen cases upon petition by an alien who conceded deportability before the effective date of AEDPA for the limited purpose of permitting him or her to contest deportability.

## Conclusion

For the foregoing reasons, AEDPA § 440(d) should be applied to INA § 212(c) cases pending before the EOIR on the effective date of AEDPA. EOIR shall reopen cases upon petition by an alien who conceded deportability before April 24, 1996, the effective date of AEDPA, for the limited purpose of permitting the alien to contest deportability.

JANET RENO
*Attorney General*

# OPINIONS

OF THE

# OFFICE OF LEGAL COUNSEL